UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAZEL HERM | § | |
| Plaintiff, | § § § | |
| v. | § § | C.A. NO. 4:08-cv-2272 |
| UNION CARBIDE CORPORATION, | § § § § | |
| Defendant. | § § | |

### MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 16.) After considering the parties' filings and the applicable law, the Court finds that the Motion should be granted.

I.   BACKGROUND

Plaintiff Hazel Herm has been an employee of Defendant since 1981, working as a hydrocarbons operator.[1] Defendant currently employs 25 hydrocarbon and energy systems operators, and three of those, including Plaintiff, are female. (Herm Dep. 73-74, June 30, 2009.) During the relevant time period, Plaintiff's immediate supervisor was Lisa LaBean, a production leader. (Herm Dep. 40:19-22.) Plaintiff alleges that LaBean, as well as unnamed members of Defendant's Human Resources Department, discriminated against her on the basis of her gender. In general, Plaintiff claims that male operators "had support, room to do their job, freedom to make decisions, and support of other male operators." (Herm Dep. 55:11-15.)

---

[1] These facts are either undisputed or, for the purposes of this Motion only, presented in the light most favorable to Plaintiff.

Plaintiff identifies some specific incidents of discrimination. First, she argues that, in July 2007, she was unfairly disciplined after LaBean found Plaintiff in the control room reclined in a chair, with her feet propped up on another chair and a blanket draped over her lap. (Herm Dep. 53-54; 88-95.) At the time, Plaintiff was working the night shift by herself, and it was approximately 10:00 p.m. Plaintiff admits that it could have appeared as though she was sleeping in this position, but she denies that she actually was. Following the incident, LaBean issued a discliplinary letter to Plaintiff. The letter instructed Plaintiff to meet with LaBean on July 20, 2008 to discuss the incident. Plaintiff was on vacation when the meeting was supposed to occur, and she contacted the overtime coordinator to let him know that she would not attend the meeting with LaBean, but she did not attempt to call or email LaBean (Herm Dep. 103-107.) Plaintiff was placed on a Performance Improvement Plan and required to set up six monthly Performance Improvement Plan meetings with LaBean by August 15, but Plaintiff did not set up the meetings until after this deadline. (Herm Dep. 107:6-10.)

Next, Plaintiff complains that she was unfairly disciplined for discrepancies between her time cards and gate reports regarding her working hours from the period of April 5, 2007 to August 7, 2007. Plaintiff admits that, after LaBean asked her about these discrepancies, she changed the company's logbook to reflect that she was investigating possible problems with a waste water line during the times in question. (Herm Dep. 117-120.)

Plaintiff further alleges that LaBean discriminated against her by removing her from the day operator position, in which she was required to fulfill job duties that were previously performed by three male employees. (Herm Dep. 56:23-57:2.) Plaintiff began work as the day operator in September 2008, and her hours were 6:00 a.m. to 5:00 p.m. (Herm Dep. 62:18-24.) Plaintiff received overtime pay for this shift. (*Id.* at 62:25-63:1.) Plaintiff's hours were then

changed from 6:00 a.m. to 2:00 p.m., which, according to Plaintiff, is an insufficient amount of time to accomplish the day operator's tasks. (*Id.* at 63-64.) Plaintiff did not suffer a pay loss or a loss in seniority when she was removed from the position. (Herm Dep. 145-146.) Plaintiff alleges that she was by-passed for promotions and denied opportunities, but she was unable to describe when she had applied for a promotion, and or the position for which she had applied. (Herm Dep. 45-47.) Plaintiff claims that Defendant's Human Resources Department discriminated against her by failing to respond to Plaintiff's complaints regarding LaBean. (Herm Dep. 44:18-23.)

Since filing her EEOC complaint on October 26, 2007, LaBean conducted Plaintiff's 2007 employee evaluation, in which Plaintiff was moved from the "B" to the "C" payband. (Herm Dep. 140-141.)[2] Plaintiff argues that her evaluation contained errors and misstatements which were made in retaliation for her EEOC complaint. (Herm Dep. 77:22-25.) Defendant admits that there were some discrepancies in Plaintiff's 2007 evaluation, but it has since corrected these errors, which did not affect Plaintiff's pay grade. (Def.'s Mtn., Ex. B.) LaBean also issued Plaintiff a "last chance" letter on March 3, 2008. The letter indicated that LaBean had reviewed four instances of time card discrepancies with Plaintiff, as well as the modifications Plaintiff had made to the log book. The letter also states that LaBean set up a meeting in December 2007 to discuss these incidents with Plaintiff, but that Plaintiff left the work site with no explanation. As a result, the letter informed Plaintiff that she would be suspended, without pay, for five shifts, and placed on probation for a twelve month period. (*Id.*)

---

[2] Defendant uses four pay grades that are linked to an employee's yearly evaluation. The grades are as follows:

    Band A is paid 1.5% above the average wage increase.
    Band B is paid at the average wage increase.
    Band C is paid 0.75% below the average wage increase.
    Band D is a zero increase.

(Porter Aff., Def.'s Mtn., Ex. C.)

Plaintiff has presented declarations from several of Defendant's employees about the allegedly hostile work environment. Many of the declarants stated that Plaintiff did the work "that three men together did previously." Michael Bauman testified that Plaintiff is "a very good employee and fellow co-worker" but that she has always been treated differently from the other operators and that she has had to endure "some uncomfortable working conditions." (Bauman Aff., Pls. Resp., Ex. 1.) Bauman described the incident where LaBean saw Plaintiff working late with a small blanket draped over her legs and commented that Plaintiff "was nesting." (*Id.*) Bauman argued that this comment was unfair, because other operators would "nod off" and not garner any comments from LaBean. (*Id.*; Cotton Aff., Pls. Resp., Ex. 2; Evans Aff., Pls. Resp., Ex. 3.) Further, Bauman argues that Plaintiff was doing a good job as day operator and should not have been relieved from that position. (*Id.*)

Byron Cotton testified that he has seen male employees with proven safety violations receive higher pay status and promotions. (*Id.*; Evans Aff.; Roundtree Aff., Pls. Resp., Ex. 7.) Day operators regularly leave the site for lunch, and male employees sometimes pick up food from Whataburger while on the clock. (Cotton Aff.; Matranga Aff., Pls. Resp., Ex. 5; Roundtree Aff.) Cotton also testified that operators routinely change the logbook information. (Cotton Aff.; Roundtree Aff.) Eddie Evans testified that Plaintiff "was set up to fail [in the day operator's position] with limited overtime." (Evans Aff.; James Aff., Pls. Resp., Ex. 4; Morales Aff., Pls. Resp., Ex. 6.) Further, he states that her job was given to a junior operator with less training. (*Id.*) Misty Snider testified that LaBean routinely asked her to pull Plaintiff's time records, approximately every three months. (Snider Aff., Pls. Resp., Ex. 8.) LaBean only asked for Plaintiff's records. (*Id.*)

4

In her Amended Complaint, Plaintiff alleges claims of a hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. ANALYSIS

### A. Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B. Hostile Work Environment

Defendant argues that Plaintiff cannot establish a prima facie claim for hostile work environment supervisor harassment. According to Defendant, Plaintiff's hostile work environment claim is based on accusations that male operators had "support," "room to do their job," and "freedom to make decisions." She was not afforded the same freedoms. Further, she argues that her Performance Improvement Plan, goal setting plan, and her 2007 and 2008 evaluations support her hostile work environment claim. Defendant contends that neither these nor any other aspects of Plaintiff's work history support an inference that LaBean was discriminating against Plaintiff on the basis of her gender. Defendant further argues that disciplinary measures challenged by Plaintiff were routine, which does not meet the standard required for a hostile work environment claim.

Plaintiff responds that her numerous grievances, coupled with the declarations from Defendant's employees, demonstrate that Plaintiff was subject to unwanted discrimination and harassment. Plaintiff asserts that the declarations show that LaBean treated Plaintiff differently from her male colleagues, and that she was denied deserved promotions, raises and overtime, privileges that were available to Defendant's male employees.

In order for evidence to ground a claim of harassment, the plaintiff must prove (i) she was a member of a protected class (ii) she was subject to unwelcome harassment (iii) the harassment was motivated by her membership in a protected class; (iv) harassment affected a term or condition of her employment; and (v) employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Harvill v. Westward Communications,* LLC, 433 F.3d 428, 434 (5th Cir. 2005) (describing elements for harassment by a coworker); *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). The Fifth Circuit distinguishes harassment

by a supervisor from that of a co-worker—the fifth element is not required to establish a prima facie case of harassment in the case of a supervisor. *Aryain v. Wal-Mart Stores Texas LP*, 435 F.3d 473, 479 n.3 (5th Cir. 2008); *Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999) (holding that a negligence standard governs employer liability for co-worker harassment). *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). There is no dispute that LaBean was Plaintiff's supervisor during the relevant period.

To affect a term, condition, or privilege of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of the [the victim's] employment and create an abusive working environment." *Aryain v. Wal-Mart Stores*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)). The environment must be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain*, 534 F.3d at 480 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). The Fifth Circuit has held that a supervisor's careful monitoring of job performance and the decision not to grant a discretionary award, absent any other evidence of prohibited discrimination, does not suffice to support a claim for hostile work environment. *Ellis v. Principi*, 264 Fed. Appx. 867, 2007 WL 2510620 (5th Cir. 2007) (not designated for publication). It further held that denial of a plaintiff's request for a promotion or the issuing of an unsatisfactory evaluation resulting in a performance improvement plan does not constitute a hostile work environment. *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Viewing the facts in the light most favorable to Plaintiff, LaBean's actions—disciplining Plaintiff following the chair incident and the logbook incident, requiring Plaintiff to complete a

Performance Improvement Plant, and giving Plaintiff a negative evaluation in 2007—do not approach the "severe and pervasive" harassment required to support a hostile work environment claim.[3]

### C. Retaliation

Plaintiff alleges, in her discovery responses, that she believes she received an unfavorable evaluation in 2007 in retaliation for having filed her EEOC claim against Defendant. (Herm Dep. 70, 138-199.) Defendant contends that the 2007 evaluation was not an adverse employment action, and that, even if it were, there is no evidence that the discipline was in retaliation for Plaintiff's EEOC filing. Finally, Defendant argues that it has presented evidence of a legitimate, non-discriminatory reason for the 2007 evaluation. When Plaintiff grieved the 2007 evaluation, Defendant reviewed it and made corrections where information had been transposed between spreadsheet and document. The Performance Improvement Plan was unchanged.

Plaintiff responds that, before she filed her EEOC complaint in October 2007, she had received positive employment evaluations for 2005 and 2006. Plaintiff then received a negative employment evaluation for 2007 that contained numerous inaccuracies by LaBean that were designed to misconstrue plaintiff's actual job performance. Further, Plaintiff argues that she lost the job of the day operator because she commenced this action.

"It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [she] has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing...." 42 U.S.C. § 2000e-3. A plaintiff may establish a

---

[3] The Court notes that Plaintiff alleges that male employees were not subject to the same discipline; however, Plaintiff does not assert a disparate treatment claim and has not argued that these male employees were similarly situated.

prima facie case of unlawful retaliation by demonstrating: "1) [she] engaged in protected activity, 2) [she] suffered an adverse employment decision, and 3) a causal link exists between the protected activity and the adverse employment decision." *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007). *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001); *Arensdorf v. Paulson*, No. 6-cv-3324, 2008 WL 4411597 (S.D. Tex. Sept. 29, 2008). Protected activity includes opposing an employment practice protected under Title VII, making a charge of discrimination, or testifying, assisting, or participating in an investigation or proceeding under Title VII. *Mota v. Univ. Of Texas Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001). An adverse employment action must "affect employment" or "alter the conditions of the workplace." *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 62, 67 (holding that Title VII's substantive provision and anti-retaliation provision are not coterminous and explaining the scope of the Title VII substantive provision). To establish a causal link, an employee "should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003).

The parties do not dispute that Plaintiff engaged in protected activity by filing her EEOC complaint. As Defendant contends, Plaintiff has failed to establish a casual link between the filing of the EEOC complaint and her 2007 evaluation. Plaintiff has not presented any evidence indicating that LaBean, or any other supervisor, even knew that Plaintiff had filed an EEOC complaint at the time of Plaintiff's 2007 evaluation. "Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decision makers had knowledge of [her] protected activity." *Manning*, 332 F.3d at 883 n. 6 (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir.2001)). Furthermore, Plaintiff has not presented any evidence indicating that her transfer from the day operator position back to

her regular shift schedule was an adverse employment decision. "[A] transfer ... can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting, or providing less room for advancement." *Alvardo v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007). Plaintiff admits that her transfer back to her regular shift did not decrease her pay or seniority, and she does not argue that the day operator position was considered more prestigious.

### III. CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the ___1st___ day of September, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.